# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATTON BOGGS, LLP, <br><br> Plaintiff, <br><br> v. <br><br> CHEVRON CORPORATION, <br><br> and <br><br> GIBSON DUNN & CRUTCHER, LLP, <br><br> Defendants. | Civil Action 11-00799 (HHK) |

## MEMORANDUM OPINION

Patton Boggs, LLP, brings this action against Chevron Corporation and Chevron's counsel, Gibson, Dunn & Crutcher, LLP, seeking a declaratory judgment that Patton Boggs's representation of parties adverse to Chevron in other courts does not violate standards of professional conduct such that Patton Boggs could be disqualified from participating in those cases. Patton Boggs also presents claims of tortious interference and civil conspiracy against both defendants. Before the Court is defendants' motion to dismiss [#10], which argues that this Court's recent dismissal of a near-identical suit between these parties, *see Patton Boggs, LLP v. Chevron Corp.* (*Patton Boggs I*), 2011 WL 1474866 (D.D.C. Apr. 19, 2011), bars most of Patton Boggs's claims, and that, in any event, Patton Boggs's complaint fails to state a plausible claim for relief. Upon consideration of the motion, the opposition thereto, and the record of both cases, the Court concludes that the motion must be granted.

# I. BACKGROUND

The events underlying this case have been chronicled at length elsewhere. *See Patton Boggs I*, 2011 WL 1474866, at *1–2; *Chevron Corp. v. Steven Donziger*, 768 F. Supp. 2d 581, 600–24 (S.D.N.Y. 2011). In brief, Patton Boggs represents numerous parties in Ecuador ("the Lago Agrio plaintiffs") who are engaged in litigation with Chevron, both in Ecuador and in the United States. Patton Boggs also owns the Breaux Lott Leadership Group, a lobbying organization that previously worked for Chevron on related issues. In November 2010, Patton Boggs filed suit in this Court, *Patton Boggs, LLP v. Chevron Corp.*, No. 10-01975 (D.D.C.), seeking a declaratory judgment that its ownership of the Breaux Lott Group did not create a conflict of interest that would prevent it from representing parties adverse to Chevron. Chevron moved to dismiss Patton Boggs's complaint on multiple grounds. Patton Boggs responded by moving to strike Chevron's motion to dismiss and seeking leave to amend its complaint to add claims of tortious interference against Chevron and Gibson Dunn.

On April 19, 2011, the Court issued a memorandum opinion dismissing the case. *Patton Boggs I*, 2011 WL 1474866. The Court first denied Patton Boggs's motion for leave to amend its complaint, explaining that, because Patton Boggs did not allege any facts suggesting that Chevron and Gibson Dunn's conduct had caused an actual breach of Patton Boggs's contract with the Ecuadorian plaintiffs, it had failed to state a claim of tortious interference with contract under District of Columbia law. *See Patton Boggs I*, 2011 WL 1474866, at *2–3. The Court assumed that District law applied because both parties did so, and "courts need not address choice of law questions *sua sponte*." *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991). The Court also rejected a claim for tortious interference with an

attorney-client relationship (finding no indication that such a cause of action exists under District law) and a civil conspiracy claim (which cannot lie absent a viable underlying tort claim). *See Patton Boggs I*, 2011 WL 1474866, at *4.[1]

The Court then granted Chevron's motion to dismiss Patton Boggs's declaratory judgment claim. The Court concluded that Patton Boggs's requested remedy — a declaratory judgment that "the Breaux Lott Leadership Group's prior non-legal work for Chevron does not provide a basis for disqualifying Patton Boggs from representing the Ecuadorian Plaintiffs," Complaint at 10, *Patton Boggs I*, 2011 WL 1474866 (No. 10-01975) — went well beyond any justiciable controversy created by Chevron's alleged threat to seek Patton Boggs's disqualification from the actions that Chevron had initiated under 28 U.S.C. § 1782 (which authorizes district courts to issue orders permitting discovery for use in foreign proceedings). *See Patton Boggs I*, 2011 WL 1474866, at *5–6. Further, the Court concluded that, insofar as the action was ripe for adjudication, abstention under the Declaratory Judgment Act was appropriate, because the question of Patton Boggs's ability to appear in Chevron's various collateral proceedings was one better settled by the courts presiding over those cases. *See id.* at *7. The Court noted that for it "to inform all other federal courts that Patton Boggs is qualified to represent the Lago Agrio plaintiffs before those courts would be incredibly intrusive." *Id.*

Soon after the Court's April 19 ruling, Patton Boggs moved for reconsideration thereof and sought leave to add new claims of tortious interference against Chevron and Gibson Dunn. Simultaneously, Patton Boggs filed this action, which presents claims identical to those that

---

[1] The Court also denied Patton Boggs's motion to strike Chevron's motion to dismiss because it found no material therein sufficiently prejudicial or scandalous to warrant striking the motion. *See Patton Boggs*, 2011 WL 1474866, at *4–5.

Patton Boggs sought to add in the first action. On July 8, 2011, the Court denied Patton Boggs's motion for reconsideration. *See Patton Boggs, LLP v. Chevron Corp*. (*Patton Boggs II*), 2011 WL 2652466 (D.D.C. July 8, 2011). Because the Court concluded that it had not erred by dismissing the first case, it did not reach the question whether Patton Boggs should be allowed to amend its complaint in that action to add the claims that it also presents here. *See id.* at *6.

## II. LEGAL STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a complaint, or a claim therein, that fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, although a complaint need not contain detailed factual allegations, it must recite facts sufficient to at least "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citation omitted) (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed. 2004)). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557) (alterations in original). At bottom, a complaint must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## III. ANALYSIS

Defendants seek the dismissal of this action on two grounds. First, they argue that four of Patton Boggs's five claims are barred by claim preclusion, issue preclusion, or both. Second, they argue that the complaint does not state a cognizable claim for relief. The Court will first address the question of preclusion.[2]

### A. Claims I, II, III, and V are Barred by Claim and/or Issue Preclusion

The twin doctrines of claim preclusion and issue preclusion serve to "prevent[] repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). Claim preclusion applies where "there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties . . . , and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006). Issue preclusion applies when "an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 334 (D.C. Cir. 2011) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)) (internal quotation marks omitted). Here, defendants argue that these two doctrines operate to bar all of Patton Boggs's claims (with the exception of those allegations in Count IV related to post-February 7, 2011 conduct, addressed below). *See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 8–13.

---

[2] Although preclusion is an affirmative defense that is generally pleaded in a defendant's answer, it may be raised in a pre-answer Rule 12(b)(6) motion when the relevant facts are shown by the court's own records. *Camp v. Kollen*, 567 F. Supp. 2d 170, 172 n.3 (D.D.C. 2008) (citing *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 76–77 (D.C. Cir. 1997); *Evans v. Chase Manhattan Mortg. Corp.*, 2007 WL 902306, *3 (D.D.C. Mar. 23, 2007)).

Patton Boggs's complaint presents five claims: Count I, seeking a declaratory judgment that Patton Boggs may represent the Lago Agrio plaintiffs without contravening its ethical obligations; Count II, alleging tortious interference under § 766A of the Second Restatement of Torts; Count III, alleging tortious interference with an attorney-client relationship; Count IV, alleging tortious interference under § 766 of the Restatement; and Count V, alleging civil conspiracy.³ Count I is the same declaratory judgment claim that the Court dismissed in *Patton Boggs I*. *See* 2011 WL 1474866, at *5–7. Likewise, Counts II, III, and V are identical to the claims in the proposed first amended complaint that the Court denied leave to file in *Patton Boggs I*. *See id.* at *2–4. Count IV is new, at least in part; it alleges tortious conduct that occurred after February 7, 2011, when the proposed complaint was submitted to the Court. *See* Compl. ¶¶ 88–92.

Patton Boggs acknowledges that four of its five claims are identical to those that the Court dismissed or denied leave to add in *Patton Boggs I*. And it does not dispute that "denial of leave to amend on the merits precludes subsequent litigation of the claims in the proposed amended complaint." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) (emphasis omitted); *accord McKenna v. City of Philadelphia*, 304 F. App'x 89, 93 (3d Cir. 2008); *Prof'l Mgmt. Assoc., Inc. v. KPMG LLP*, 345 F.3d 1030, 1031 (8th Cir. 2003). Patton Boggs argues, however, that it was denied the "full and fair opportunity" to litigate its claims that is required for either preclusion doctrine to apply. *See Allen v. McCurry*, 449 U.S. 90, 101 (1980);

---

³ The complaint captions both the fourth and fifth counts therein "Count IV," but the Court understands this to be a typographical error.

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971). Patton Boggs is incorrect.

As to Count I, which seeks a "declaratory judgment that there is no basis for disqualification of Patton Boggs from its representation of the Ecuadorian Plaintiffs," Compl. ¶ 64, Patton Boggs argues that it was denied that opportunity because the Court mistakenly overlooked two "critical" facts in dismissing its prior, identical declaratory judgment claim: (1) that Patton Boggs's disqualification would involve a threshold question of District law; and (2) that one of Patton Boggs's collateral actions is proceeding before another judge of this judicial district. But this argument draws an incorrect conclusion from an incorrect premise. First, even if Patton Boggs were correct that these facts mattered, that would establish at most that the Court's decision in *Patton Boggs I* was erroneous, not that it lacked preclusive effect. *See Montana v. United States*, 440 U.S. 147, 162 (1979) ("[A] *fact*, *question* or *right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law." (quoting *United States v. Moser*, 266 U.S. 236, 242 (1924) (emphasis added))). Second, as the Court has already explained, these facts are "simply irrelevant to the Court's bottom-line determination that it would overreach by adjudicating the propriety of Patton Boggs's appearance before other courts." *Patton Boggs II*, 2011 WL 2652466, at *3; *see also Patton Boggs I*, 2011 WL 1474866, at *7.[4] Consequently, there is no basis for Patton Boggs's contention that the Court's failure to address these factors in *Patton Boggs I* prevents that decision from having

---

[4] Further, Patton Boggs's first "fact" — that its disqualification would involve a threshold question of District law — is both unsupported and appears to be a repackaged version of an argument that the Court rejected in *Patton Boggs I*. *See* 2011 WL 1474866, at *6.

7

preclusive effect. Thus, defendants are correct that Count I is barred by issue preclusion and must be dismissed.[5]

Counts II, III, and V, the tort claims, fare no better. Patton Boggs contends that the Court did not fully and fairly adjudicate these claims because *Patton Boggs I* did not address whether Patton Boggs had stated a claim of tortious interference under either New Jersey law or the theory of tortious interference articulated in § 766A of the Restatement. Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 8. The obvious problem with this argument, however, is that the Court considered Patton Boggs's tortious interference claims under District of Columbia law and § 766 *because that is what Patton Boggs did*. As the Court explained in denying Patton Boggs's motion for reconsideration, Patton Boggs's own reply brief laid out the precise formulation of tortious interference — under District law — that Patton Boggs now argues the Court erred by employing. *See Patton Boggs II*, 2011 WL 2652466, at *5. Patton Boggs made no mention whatsoever of either New Jersey law or § 766A prior to the filing of its motion for reconsideration in the first action and the complaint in this action. Thus, Patton Boggs cannot claim to have been denied the opportunity to fully litigate its tort claims; rather, by neglecting to raise these arguments earlier, it simply failed to take proper advantage of that opportunity. That lapse does not entitle Patton Boggs to a second bite at the apple. *See Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (claims are barred if they stem from the same nucleus of facts, regardless of the legal theory on which a litigant

---

[5] Even if Count I were not barred by issue preclusion, the Court would still, for the reasons given in its two prior opinions, abstain under the Declaratory Judgment Act. *See Patton Boggs II*, 2011 WL 2652466, at *3; *Patton Boggs I*, 2011 WL 1474866, at *7.

8

relies); *NRDC v. EPA*, 513 F.3d 257, 261 (D.C. Cir. 2008) (claim preclusion bars the relitigation of claims, not just arguments).

Accordingly, the Court must conclude that Counts II, III, and V are barred by claim preclusion. *Patton Boggs I* rendered a final, valid judgment on the merits of claims between the same parties that were based on the same cause of action.[6] Thus, these claims must be dismissed. The Court need not determine whether they are also barred by issue preclusion.

That leaves Count IV, a § 766-type tortious interference claim, which alleges that since February 7, 2011 — not coincidentally, the date of Patton Boggs's motion for leave to add the claims that the Court rejected in *Patton Boggs I* — defendants have "engaged in further misconduct by undertaking efforts to cut off the Ecuadorian Plaintiffs' source of funds, causing the Ecuadorian Plaintiffs to breach their contract with Patton Boggs by non-payment of Patton Boggs' legal fees and expenses." Compl. ¶ 90. Defendants concede that, to the extent that this claim is based on post-February 7 events, it is not barred by preclusion principles. They do, however, contend that it must be limited to that time period, because any pre-February 7 allegations of tortious interference could have been included in the tortious interference claim that Patton Boggs sought leave to add on that date. The Court agrees. *See Velikonja v. Ashcroft*, 355 F. Supp. 2d 197, 203 (D.D.C. 2005) (holding that the plaintiff in a subsequent action "may not bring any claims based on events that occurred prior to th[e] date [of the prior complaint] if those events are part of the same set of events as those already litigated"). Accordingly, the

---

[6] Insofar as Patton Boggs argues that its tortious interference claim under New Jersey law and/or § 766A is not based on the same cause of action as the claims that the Court dismissed in *Patton Boggs I*, it is incorrect. Claim preclusion bars subsequent suits based the same nucleus of facts, regardless of the legal theory on which the plaintiff relied. *See Capitol Hill Grp.*, 569 F.3d at 490; *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002).

Court will now determine whether Count IV states a plausible claim that defendants engaged in tortious interference after that date.

**B.      Count IV Fails to State a Claim for Relief**

Before addressing the merits of Count IV, the Court pauses briefly to note that, again, neither party has addressed the issue of what law governs here. Patton Boggs cites § 766 of the Restatement of Torts as providing the cause of action for Count IV, but the Restatement is not a free-standing body of law that this Court can apply in the absence of state or local law adopting it. *See Burke v. Air Serv Int'l, Inc.*, 2011 WL 1237625, at *3 n.5 (D.D.C. Mar. 30, 2011). Accordingly, as it did before, the Court will apply District of Columbia law, *see Patton Boggs I*, 2011 WL 1474866, at *2, which incorporates § 766. *See Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 290 (D.C. 1989).[7]

Under District law, a successful tortious interference claim of this type requires: the existence of a contract; knowledge of the contract by the defendant; the defendant's intentional procurement of the contract's breach; and damages resulting from that breach. *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 325 (D.C. 2008). The complaint clearly establishes the existence of a contract. *See* Compl. ¶ 29. It also alleges, albeit in conclusory fashion, that defendants were aware of that contract. Compl. ¶ 89. The crux of Count IV is this allegation: "Defendants have engaged in further misconduct by undertaking efforts to cut off the Ecuadorian Plaintiffs' source of funds, causing the Ecuadorian Plaintiffs to breach their contract with Patton

---

[7]     Applying D.C. law here is proper not only because "courts need not address choice of law questions *sua sponte*," *In re Korean Air Lines Disaster*, 932 F.2d at 1495, but also because the parties are now aware that the Court will do so in the absence of any briefing or argumentation on choice-of-law issues. *See Patton Boggs I*, 2011 WL 1474866, at *2.

Boggs by non-payment of Patton Boggs' legal fees and expenses." Compl. ¶ 90; *see also* Compl. ¶ 4 (alleging that defendants have "taken steps to prevent Patton Boggs from obtaining payment for its services"). Conspicuously absent here are any allegations describing defendants' conduct, or plausibly suggesting that it was intended to cause a breach of Patton Boggs's contract. The complaint's assertion of "efforts . . . causing the Ecuadorian Plaintiffs to breach their contract with Patton Boggs" merely rephrases the fourth element of tortious interference: "intentional procurement of the contract's breach." *Murray*, 953 A.2d at 325; *see also Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

In fact, Patton Boggs concedes that it does not know "the exact manner and facts" of defendants' "efforts," admitting that it is "privy mainly to the result of Defendants' misconduct" (although it attributes this ignorance to defendants' successful efforts to conceal their alleged wrongdoing). *See* Pl.'s Opp'n at 5. But the fact that Patton Boggs is no longer being paid does not establish that Chevron and Gibson Dunn are responsible for that outcome, let alone that they intentionally caused it. *See Murray*, 953 A.2d at 325. If Patton Boggs has any factual basis for that conclusion, it does not appear in the complaint.

At bottom, although a complaint need not contain detailed factual allegations, it "must 'suggest a plausible scenario that sho[ws] that the pleader is entitled to relief.'" *Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011) (quoting *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009)) (alteration in original). Here, no "scenario" is presented at all. This is "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. As such, it is insufficient to state a claim for relief. Accordingly, Count IV will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss must be granted in full. An appropriate order accompanies this memorandum opinion. In closing, the Court acknowledges defendants' suggestion that Patton Boggs, by filing this action after the dismissal of its first suit, may have "unreasonably and vexatiously" multiplied the proceedings before this Court within the meaning of 28 U.S.C. § 1927, which would allow the Court to require Patton Boggs (after notice and an opportunity to be heard) to pay "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id*. After careful consideration, the Court concludes that such a step is not presently warranted, but only because the bar for the imposition of fees and costs under § 1927 is extremely high. *See Kassatly v. Dynaco Acquisition Corp.*, 1997 WL 31104, at *3 (D.D.C. Jan. 22, 1997) ("The advancement of meritless positions, . . . unless it is *utterly* without colorable basis, will not support [sanctions under § 1927]." (emphasis added)).

Henry H. Kennedy, Jr.<br>
United States District Judge